SCHOOL COMMITTEE OF WESTPORT *vs.* AMERICAN FEDERATION OF STATE, COUNTY AND MUNICIPAL EMPLOYEES, COUNCIL 93, LOCAL 2667. No. 02-P-11. June 25, 2004. *School and School Committee,* Collective bargaining, Arbitration, Seniority, Termination of employment. *Arbitration,* Collective bargaining, Authority of arbitrator, School committee. *Contract,* Collective bargaining contract.

A collective bargaining agreement in effect between the parties from July 1, 1997, to June 30, 2000, specified that, among the three paraprofessionals in the Westport School District (two in the middle school and one in the high school),[1] layoffs were to be determined by seniority. However, in June, 1998, when the Westport School Committee eliminated the position of the senior paraprofessional due to budget cuts, Patricia Morse — intermediate in seniority — was the one who lost her job. Bumped by her senior colleague, Morse in turn sought to bump the high school paraprofessional, who had the least seniority of the three. The principal of the high school refused to approve the transfer, apparently without explanation. The committee acknowledges that the school district failed to follow the agreement, and it has never contested that Morse is qualified for the position. No other objection to her candidacy has been raised.

The defendant (union) filed a grievance on Morse's behalf, which proceeded to arbitration, pursuant to the agreement. On December 13, 1999, the arbitrator found in the union's favor and ordered the committee to reinstate Morse and reimburse her for lost wages and benefits. The committee then brought this action to vacate the award, alleging that the arbitrator "exceeded [his] powers or rendered an award requiring a person to commit an act or engage in conduct prohibited by [S]tate or [F]ederal law." G. L. c. 150C, § 11(*a*)(3). The committee claimed that the remedy ordered violated G. L. c. 71, § 59B, by supplanting the principal's discretionary authority over hiring and firing decisions.[2] See *School Comm. of Holbrook* v. *Holbrook Educ.*

---

[1]The duties of paraprofessionals are not specified in the record. The other categories of employees covered by the agreement are custodians, cafeteria workers, clerical workers, and teaching assistants. Paraprofessionals earned an hourly wage in rough accordance with the first three groups and significantly less than teaching assistants.

[2]General Laws c. 71, § 59B, provides, in relevant part: "Principals employed under this section shall be responsible, consistent with district personnel policies and budgetary restrictions and subject to the approval of the superintendent, for hiring all teachers . . . and other personnel assigned to the school, and for terminating all such personnel, subject to review and prior approval by the superintendent and subject to the provisions of this chapter." Contrary to other statutes, the mandates of G. L. c. 71, § 59B, do not succumb to contrary terms contained in a collective bargaining agreement. See G. L. c. 150E, § 7(*d*); *School Comm. of Natick* v. *Education Assn. of Natick*, 423 Mass. 34, 39 (1996).

*Assn.*, 395 Mass. 651, 654 (1985); *School Comm. of Newton* v. *Newton Sch. Custodians Assn., Local 454*, 438 Mass. 739, 751-752 (2003); *Lyons* v. *School Comm. of Dedham*, 440 Mass. 74, 78 (2003). A Superior Court judge upheld the arbitrator's decision, granting summary judgment to the union upon the undisputed facts. The committee appealed.

The relevant legislative history of G. L. c. 71, § 59B, is set forth in *School Comm. of Pittsfield* v. *United Educators of Pittsfield*, 438 Mass. 753, 759-762 (2003). Under the statute, part of the Education Reform Act, St. 1993, c. 71, § 53, principals inherited the school committee's former managerial authority over hiring, discipline, and termination and "broad discretion to determine . . . whom to hire from among a pool of applicants," while school committees continue to determine personnel-related policies and procedures — including the qualifications applicable to specific positions and the manner in which applicants are to be evaluated — as a matter of collective bargaining.[3] *School Comm. of Newton* v. *Newton Sch. Custodians Assn., Local 454*, 438 Mass. at 747. This accords with the "well-settled" rule that " 'specific appointment determinations . . . are within the exclusive managerial authority of a school committee [now the principal], and thus beyond the scope of collective bargaining.' " *School Comm. of Holbrook* v. *Holbrook Educ. Assn.*, 395 Mass. at 655, quoting from *Boston Teachers Local 66* v. *School Comm. of Boston*, 386 Mass. 197, 211 (1982). Where a principal's discretion is implicated, an arbitrator may not intrude upon his or her final authority by ordering that a particular individual be given a position. *School Comm. of Newton* v. *Newton Sch. Custodian Assn., Local 454, supra* at 749-752. "In contrast, . . . the movement of an employee from one position to another, not at the employee's request, but to satisfy the general staffing needs of the [school district] . . . is not the 'hiring' of an employee in ordinary parlance or within the meaning of § 59B . . . and is consonant with the school committee's statutory power to direct the district's over-all staffing, while leaving intact the principal's governing authority over his or her school pursuant to § 59B. As such, [it] is a proper subject of collective bargaining between the school committee and the union and subject to the binding arbitration provisions of the agreement." *School Comm. of Pittsfield* v. *United Educators of Pittsfield*, 438 Mass. at 764. See *Bradley* v. *School Comm. of Boston*, 373 Mass. 53 (1977) (arbitrator may order that transfer requests of acting principals be allowed where collective bargaining agreement's procedures were not followed, applicants' qualifications were unquestioned, and no reasonable objection against their candidacies was raised); *School Comm. of Newton* v. *Labor Relations Commn.*, 388 Mass. 557, 563-567 (1983) (collective bargaining over means of achieving reduction in force — including which employees to lay off — would not encroach upon school committee's nondelegable discretion). The bumping system does not implicate the nondelegable authority of the high school principal in determining who among a group of applicants will be hired to fill a vacant position.

---

[3]As the nondelegable authority (not capable of being submitted to collective bargaining nor subject to review) over employment currently possessed by principals was transplanted from that previously accorded to school committees, cases under the earlier statute remain relevant on this point. See *Higher Educ. Coordinating Council/Roxbury Community College* v. *Massachusetts Teachers' Assn./Mass. Community College Council*, 423 Mass. 23, 29 n.6, 31 n.8 (1996); *School Dist. of Beverly* v. *Geller*, 435 Mass. 223, 234 n.12 (2001) (Cordy, J., concurring).

Accordingly, we agree with the judge's conclusion that the bumping system, as it operated among the school district's paraprofessional employees, was a proper subject of collective bargaining — as part of the "terms and conditions of employment" — and did not encroach upon the nondelegable discretion of the principal defined by § 59B.

*Judgment affirmed.*

*Andrew J. Waugh* for the plaintiff.
*Angela M. Davidovich* for the defendant.