MARY HOGAN vs. LABOR RELATIONS COMMISSION.

Suffolk. December 9, 1999. - January 20, 2000.

Present: MARSHALL, C.J., ABRAMS, LYNCH, GREANEY, IRELAND, SPINA, & COWIN, JJ.

*Administrative Law*, Decision. *Labor*, Public employment, Unfair labor practice, Union agency fee. *Public Employment*, Collective bargaining.

This court concluded that the provisions of G. L. c. 150E do not require a public employer to confirm that a union has complied with all statutory procedural requirements before the employer, under the applicable collective bargaining agreement, proposes to suspend an employee for nonpayment of an agency service fee: the employee's recourse for an unlawful service fee demand is the filing of a prohibited labor practice charge against the union, and, against the employer, through resort to appropriate judicial proceedings. [613-615]

APPEAL from a decision of the Labor Relations Commission.

The Supreme Judicial Court granted an application for direct appellate review.

*Bruce N. Cameron* for the plaintiff.

*John B. Cochran* for the defendant.

ABRAMS, J. The plaintiff, Mary Hogan, appeals from a decision of the defendant, Labor Relations Commission (commission), which concluded that a public employer does not commit a prohibited labor practice under G. L. c. 150E by proposing to suspend an employee for nonpayment of an agency service fee because the union used improper procedures to collect that fee. We granted the plaintiff's application for direct appellate review. We affirm the decision of the commission.

When the dispute arose, Hogan was employed by the school committee of Springfield (school committee) in the Springfield public schools as a clerk. The school committee and the American Federation of State, County, and Municipal Employees, Council 93, AFL-CIO, local 3556 (union), were parties to a collective bargaining agreement that required employees covered by the agreement, including Hogan, either to join the union or to pay an agency service fee. In the fall of 1996, the union

invited Hogan to join, but Hogan declined. On December 20, the union sent Hogan an agency fee demand.

By letter dated February 7, 1997, the union notified the school committee of employees who had failed to pay either union dues or a service fee. The union requested that the school committee impose the penalty for refusal to pay as prescribed in the agency service fee provision in the parties' collective bargaining agreement. In response, the school committee sent a letter to Hogan advising her that she would be suspended for five school days without gross pay if she failed to pay union dues or the service fee. On May 5, the school committee sent a second letter to Hogan informing her that she would be suspended between May 19 and May 23.

On May 13, Hogan filed a prohibited labor practice charge with the commission alleging that the school committee violated G. L. c. 150E, §§ 10 (*a*) (1), 10 (*a*) (3), and 12.[1] In this charge, she based her complaint on the failure of the school committee and the union to provide information required pursuant to the pertinent regulations.

The commission conducted an investigation and dismissed the charge on October 16 because it did not find probable cause to believe that the school committee had violated G. L. c. 150E. The commission refused to find probable cause in light of a previous decision in which it concluded that "it would not extend responsibility to employers under [G. L. c.] 150E for failing to ensure that the [u]nion employed adequate procedural safeguards before the employer enforced an agency fee provision in a collective bargaining agreement." See *West Springfield & Janet Leonard*, 21 M.L.C. 2116 (1994), aff'd sub nom. *Leonard* v. *Labor Relations Comm'n*, 42 Mass. App. Ct. 1112 (1997).

Hogan filed a request for reconsideration of the dismissal pursuant to 456 Code Mass. Regs. § 15.04. The commission affirmed its prior dismissal. Hogan filed a second request for reconsideration on December 24 because the prior ruling was

---

[1]Two days later, on May 15, Hogan filed a prohibited labor practice charge with the commission against the union alleging that the union's service fee demand violated G. L. c. 150E, § 10 (*b*) (1). Because of this pending complaint, the school committee held Hogan's suspension in abeyance. The commission since has completed an investigation and determined that the union's demand did not meet the requirements of 456 Code Mass. Regs. § 17.05.

based, in part, on evidence that did not exist at the time of the investigation. The commission took the unusual step of reconsidering its probable cause determination a second time and affirmed its prior dismissal, on modified grounds. The commission stated that it affirmed the dismissal "on the sole ground that a public employer does not engage in a prohibited labor practice under [G. L. c.] 150E [by failing to ensure that] a union has used []proper procedures to collect an agency service fee." Hogan filed a timely notice of appeal from the commission's probable cause determination. We granted her application for direct appellate review.

We grant "due weight to the experience, technical competence, and specialized knowledge of the agency, as well as to the discretionary authority conferred upon it." G. L. c. 30A, § 14 (7). However, where an agency's decision is based on a question of law, we review the commission's interpretation de novo. G. L. c. 30A, § 14 (7). See *Protective Life Ins. Co.* v. *Sullivan*, 425 Mass. 615, 618 (1997); *Raytheon Co.* v. *Director of the Div. of Employment Sec.*, 364 Mass. 593, 595 (1974).

General Laws c. 150E, § 12, requires a union to follow certain procedures when imposing and collecting a service fee. Before imposing a fee, the union must formally execute the collective bargaining agreement imposing the fee by vote. *Id.* The union cannot receive fees until it has established procedures by which employees may seek rebates of certain expenditures. *Id.* When a union issues a demand for payment of a service fee, it must follow constitutional requirements outlined in case law, see, e.g., *Abood* v. *Detroit Bd. of Educ.*, 431 U.S. 209 (1977); *School Comm. of Greenfield* v. *Greenfield Educ. Ass'n*, 385 Mass. 70 (1982), and certain rules, see 456 Code Mass. Regs. §§ 17.00-17.16. A union failing to abide by these procedural requirements has committed a prohibited labor practice. See G. L. c. 150E, § 10 (*b*) (1).

By contrast, an employer does not issue a service fee demand and, thus, is not required to follow these procedural safeguards. Further, nothing in G. L. c. 150E suggests that an employer must ensure that the union has made a proper agency service fee demand before the employer proposes to suspend an employee for nonpayment of an agency service fee. In fact, after a collective bargaining agreement requiring payment of an agency fee by nonunion employees has been properly ratified by a union, an employer is statutorily obliged to have nonunion

employees pay the service fee as a condition of employment. G. L. c. 150E, § 12. An employer who does not fulfil this requirement has committed a prohibited labor practice. G. L. c. 150E, § 10 (*a*) (5) & (1). See *Whittier Regional School Comm.* v. *Labor Relations Comm'n*, 401 Mass. 560, 563 (1988).

We do not read the statute or regulations to require an employer to confirm that a union has taken proper procedural steps before the employer fulfils its statutory obligations. Further, imposing this requirement would place an unnecessary burden on the employer. Also, requiring an employer to do so presents the risk of impairing the collective bargaining relationship between the union and the employer.

Hogan complains that it is a constitutional violation for an employer to threaten to suspend or to suspend an employee for failure to pay a service fee without first verifying that the union complied with all applicable procedural requirements. She contends that the statutes and regulations at issue are designed to protect the rights of employees under the First Amendment to the United States Constitution. Hogan states that case law requires employers to minimize the infringement upon employees' rights. See, e.g., *Chicago Teachers Union, Local No. 1* v. *Hudson*, 475 U.S. 292, 307 n.20 (1986); *Conley* v. *Massachusetts Bay Transp. Auth.*, 405 Mass. 168, 177 (1989). She argues that the commission has made these provisions and rulings meaningless, sacrificing employees' constitutional rights, by refusing to require that employers confirm that unions follow procedural requirements.

We disagree with Hogan's contention that the commission's decision allows employers to trample on the constitutional rights of nonunion employees. An employee who has received an unlawful service fee demand immediately may seek recourse against the union by filing a prohibited labor practice charge. 456 Code Mass. Regs. § 17.06. If an employee took this defensive step, a constitutional claim against the employer would not even arise because the employer may not take any punitive action against the employee for failure to pay the service fee while the charge is pending. 456 Code Mass. Regs. § 17.16(2). Further, the cases Hogan cites do not hold that an employer must correctly determine the legality and constitutionality of a union's action at the employer's peril of committing an unfair labor practice. Rather, the essence of those cases is that employees who do not share a union's ideological or politi-

cal beliefs are entitled to procedural protections to ensure that their service fee is not used by the union for impermissible purposes. See, e.g., *Chicago Teachers Union, Local No. 1* v. *Hudson, supra* at 307 n.20; *Conley* v. *Massachusetts Bay Transp. Auth., supra* at 177.

If, for any reason, the employee still desired to pursue constitutional claims against the employer, the employee could seek redress in the courts. "The commission's task . . . is to administer and interpret the public employee collective bargaining law" — not to adjudicate constitutional claims. *Plymouth Police Bhd.* v. *Labor Relations Comm'n,* 417 Mass. 436, 439 (1994).

We agree with the commission that a public employer does not engage in a prohibited labor practice under G. L. c. 150E by following its collective bargaining agreement. There is no obligation on an employer to ascertain the legality of the union's demand. We therefore affirm the order of the commission.

*So ordered.*